UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DONALD WICKHAM,                          :

        **Plaintiff,**            :     **Case No. 2:20-cv-401**
    v.                                   **JUDGE SARAH D. MORRISON**
                                 :     **Magistrate Judge Chelsey M. Vascura**


COMMISSIONER OF SOCIAL              :
SECURITY,
                                    :

        **Defendant.**

## OPINION AND ORDER

Plaintiff Donald Wickham brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Period of Disability, Disability Insurance, and Supplemental Security Income Benefits.  This matter is before the Court on the Plaintiff's Objection (ECF No. 16) to the Report and Recommendation ("R&R") issued by the United States Magistrate Judge on July 23, 2020 (ECF No. 15). For the following reasons, the Court **OVERRULES** Plaintiff's Objection, **ADOPTS** the R&R, and **AFFIRMS** the Commissioner's decision.

### I.     BACKGROUND

The Magistrate Judge accurately described the procedural background as follows. Plaintiff filed his applications for Title II Period of Disability and Disability Insurance Benefits and Title XVI Supplemental Security Income Benefits on March 30, 2016, alleging that he had been disabled since March 1, 2015. (R. 219, 226.) On January 15, 2019, following administrative denials of Plaintiff's applications initially and on reconsideration, a video hearing was held before Administrative Law Judge Francine Serafin (the "ALJ"). (*Id*. at 66–87.)

1

Plaintiff, represented by counsel, appeared and testified. Vocational expert Bill Tanzey (the

"VE") also appeared and testified at the hearing. On February 5, 2019, the ALJ issued a decision

denying benefits. (*Id*. at 18–30.) On February 14, 2019, the Appeals Council denied Plaintiff's

request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–

4.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In his Statement of Errors (ECF No. 9), Plaintiff asserted two contentions of error: (1) the

ALJ failed to properly apply the controlling weight test to the opinions of Plaintiff's treating

physicians; and (2) the ALJ failed to provide good reasons for according less than controlling

weight to the opinions of Plaintiff's treating physicians.

## II. THE ALJ'S DECISION

On February 5, 2019, the ALJ issued a decision finding again that Plaintiff was not

disabled within the meaning of the Social Security Act. (R. 18–30.) At step one of the

sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial

gainful activity since his alleged disability onset date of March 1, 2015. (*Id*. at 21.) At step two,

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?
    2. Does the claimant suffer from one or more severe impairments?
    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the

lumbar spine with stenosis, cervicalgia, major depressive disorder, post-traumatic stress disorder,

and panic disorder. (*Id*.) She further found at step three that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled one of the listed

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.) At step four of the

sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[2]

 as follows:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform medium work as defined in 20 CFR 404.1567(c) and
> 416.967(c) except he can frequently climb ramps and stairs, but
> only occasionally climb ladders, ropes, or scaffolds. The claimant
> can frequently balance, stoop, kneel, and crouch. He can
> occasionally crawl. The claimant must avoid frequent exposure to
> extreme vibration or workplace hazards such as moving machinery
> or unprotected heights. The claimant is capable of occasional
> social interaction with coworkers and supervisors, but he should
> never interact with the public or crowds. The claimant is capable of
> simple, routine, repetitive work that does not require assembly line
> or production rate pace or quotas. He is capable of tolerating a few
> changes in the work environment, which is defined as three-to-four
> changes per workday or work shift.

(*Id*. at 23.)

At step five of the sequential process, the ALJ, relying on the VE's testimony, found that

Plaintiff was capable of making a successful adjustment to other work that existed in significant

numbers in the national economy. (*Id*. at 29.) The ALJ therefore concluded that Plaintiff was

not disabled under the Social Security Act. (*Id*.)

### III.    THE R&R

The Magistrate combined her analysis of Plaintiff's Statements of Errors because each

addressed the treating physician rule. (ECF No. 15 at 4-5). Dr. Michael Sayegh was Plaintiff's

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his]
limitations." 20 C.F.R. § 404.1545(a)(1).

treating physician. Dr. Patricia Gainor was Plaintiff's treating psychiatrist. Their treatment notes

and diagnoses, and the ALJ's decisions relative to same, were aptly summarized by the

Magistrate as follows.

### A. Dr. Sayegh

After Plaintiff underwent three surgeries on his back in 2010 and 2011, Dr. Sayegh

treated Plaintiff for back pain from April 21, 2016,[3] through November 29, 2018. (R. 855–71,

913–23, 1037–38.) On April 21, 2016, Plaintiff reported chronic, shooting pain in his neck, mid

back, and lower back that he rated as 7 out of 10. (R. 855.) Dr. Sayegh consistently listed

Plaintiff's diagnoses as:

> Low back pain, sprain/strain. 2. Sciatica. 3. Herniated nucleus
> pulposus. 4. Postlaminectomy syndrome x 3. 5. Spondylosis. 6.
> Facet syndrome. 7. Cervicalgia. 8. Radiculopathy. 9. Degenerative
> disc disease. 10. Spinal stenosis. 11. Herniated nucleus pulposus
> with myelopathy. 12. Thoracic pain. 13. Radiculopathy,
> sprain/strain. 14. Herniated nucleus pulposus. [sic] 15.
> Degenerative disc disease. [*sic*] 16. HTN. 17. Anxiety. 18.
> Depression. 19. Sleep disturbance. 20. Tobacco abuse.

(R. 865, 906, 914, 916, 918, 920, 922, 1037.) At each visit after April 21, 2016, Plaintiff

reported constant pain in his neck, mid back, and low back, which he rated as either a 5 or 6 out

of 10. (R. 865, 906, 914, 916, 918, 920, 922, 1037.) Plaintiff was prescribed 10 mg of Norco

up to four times per day as needed for his pain, and continued with this dose until July 31, 2018,

when Dr. Sayegh tapered Plaintiff's medication to up to three times per day as needed. (R. 922.)

Plaintiff consistently reported that the medication seemed to be helping to improve his symptoms

and lifestyle. (R. 865, 906, 914, 916, 918, 920, 922, 1037.) The treatment notes also uniformly

record that throughout the treatment period, physical examination of Plaintiff's neck, mid, and

---

[3] The record also contains an evaluation performed by Dr. Sayegh on February 9, 2009
(R. 853–54). However, this evaluation pre-dated Plaintiff's three back surgeries in 2011–12 and
his alleged disability onset date of March 1, 2015 and is also separated in time from the
remainder of Dr. Sayegh's treatment of Plaintiff by seven years.

low back areas showed trigger points and tenderness bilaterally and in the paraspinal muscles; neurological examination of his upper and lower extremities was intact; bilateral straight leg raising tests were negative; and grips and push-pulls were strong and equal. (R. 855, 906, 914, 916, 918, 920, 922, 1037.)

On May 22, 2016, Plaintiff underwent MRIs on his cervical and thoracic spine at Dr. Sayegh's recommendation. (R. 856, 862–64.) These images demonstrated straightening of the normal cervical lordosis, which may indicate muscle spasm; central disc protrusion at C4–5 without cord compression; central protrusion of the C5–6 disc causing mild cord flattening; disc degeneration at C4–5 and C5–6; and disc degeneration and focal right paramedian protrusion at T9–10 without evidence for cord compression or neural foraminal stenosis. (R. 862, 864.)

Dr. Sayegh provided two opinions. The first was a Physical Medical Source Statement dated August 23, 2016. (R. 882–86.) Dr. Sayegh listed Plaintiff's diagnoses as "low back pain, sprain/strain; sciatica; HNP [herniated nucleus pulposus]; postlam[inectomy] syndrome x 3, spondylosis; facet syndrome; cervicalgia; radiculopathy; spinal stenosis; HNP with myelopathy; thoracic pain; DDD [degenerative disc disease]; anxiety; depression; sleep disturbance." (R. 882.) Dr. Sayegh opined that, as a result of Plaintiff's impairments, Plaintiff could walk less than one block without severe pain; could sit for 15–30 minutes at a time and for about two hours total in a day; could stand for 15–30 minutes at a time and for less than two hours total in a day; would require a job that permits shifting positions at will from sitting, standing, or walking; would need to include periods of walking around during the work day; would sometimes need unscheduled breaks, approximately once per hour for fifteen minutes each; could rarely lift less than 10 pounds and never more than 10 pounds; could never twist, stoop, crouch/squat, or climb ladders and could rarely climb stairs; could use his hands to grasp, turn, or twist objects at most 20% of the work day; could use his fingers for fine manipulations at most 20% of the work day; could use his arms to reach in front of his body at most 25% of the work day; could use his arms for overhead reaching for at most 5% of the work day; would be off-task more than 25% of the work day; would be capable of low-stress work (noting that chronic pain can lead to

increased anxiety and depression); would have "good days" and "bad days"; would be likely to
be absent from work about four days per month; and should avoid temperature extremes,
wetness, noise, and hazards. (R. 883–85.)

The second opinion was a medical source statement dated September 21, 2016. (R. 903–
04.) Dr. Sayegh listed the same diagnoses for Plaintiff as he had in his August 23, 2016 opinion.
(R. 903.) He noted the two MRI images obtained on May 16, 2016. (*Id.*) Dr. Sayegh further
noted that Plaintiff was "pending cervical fusion" with another provider, Dr. Shannon; and that
in future, Plaintiff may possibly require a lumbar epidural steroid injection, facet injection,
rhizotomy, back brace, "CT, PT." (*Id.*) Dr. Sayegh then opined the following limitations: "No
bending, lifting, stooping, crawling, pushing, pulling, climbing. [Plaintiff]'s ability to
concentrate may be affected by pain and opioid therapy (pain med)." (R. 904.)

The ALJ summarized Dr. Sayegh's treatment notes and opinions and explained that she:

> gives Dr. Sayegh's opinions little weight because these significant
> limitations are inconsistent with his own physical examinations of
> the claimant. He routinely reported that the claimant had
> tenderness and trigger points in the paraspinal muscles, but
> negative straight leg raising, no neurological deficits, and strong
> grip, push, and pulls (11F pp 4, 13; 18F pp 2, 4, 6, 8, 10; 22F p 1).

(R. 26.)

### B.      Dr. Gainor

Plaintiff saw Dr. Gainor for twelve mental health assessments from April 28, 2014,
through June 19, 2018. (R. 397–475, 892–901, 928–56, 965–75, 979–88.) At each of these
assessments, Plaintiff reported depression, anxiety, and trouble sleeping related to his mother's
ill health and death, his difficulty paying child support, childhood abuse, and travel.
(*Id.*) From April 28, 2014, through December 21, 2015, Dr. Gainor listed Plaintiff's diagnoses
as major depressive disorder, generalized anxiety disorder, and agoraphobia. (R. 402, 410, 418,

435, 453.) However, from April 18, 2016 through June 19, 2018, Dr. Gainor's diagnoses were listed as major depressive disorder, agoraphobia, and post-traumatic stress disorder. (R. 471–73, 899–900, 934, 954, 973, 986–87.) Dr. Gainor consistently prescribed a combination of Pamelor and Klonopin for Plaintiff's depression and anxiety, and doses were constant throughout the treatment period except that Pamelor was increased on March 6, 2017. (R. 933.)

Dr. Gainor occasionally assessed Plaintiff as having impaired abstract thinking. (R. 449, 467, 942, 952, 984.) She also occasionally found Plaintiff's affect to be blunted, flat, or labile. (R. 401, 431, 469, 943.) Once or twice, Dr. Gainor noted rapid, pressured, loud, or soft speech (R. 399, 431); disheveled appearance (R. 429); limited insight into problems (R. 431, 984); and limited knowledge of current events and past history (R. 467). Otherwise, all areas of assessment (speech; associations; thought processes, abnormal or psychotic thoughts; judgment and insight; orientation to person, place, and time; recent and remote memory; attention span and concentration; fund of knowledge; and mood and affect) reflected normal findings at all assessments. (R. 397–475, 892–901, 928–56, 965–75, 979–88.)

On August 15, 2016, Dr. Gainor issued a Medical Source Statement. (R. 876–80.) Dr. Gainor opined that Plaintiff suffered from major depressive disorder and generalized anxiety disorder. (R. 876.) She further opined that Plaintiff was "unable to meet competitive standards" for understanding and remembering detailed instructions, carrying out detailed instructions, setting realistic goals or making plans independently of others, and dealing with the stress of skilled or semi-skilled work. (R. 878.) Dr. Gainor also opined that Plaintiff was "seriously limited" in the areas of interacting appropriately with the general public and traveling in an unfamiliar place, and "limited but satisfactory" in the areas of maintaining socially appropriate behavior, adhering to basic standards of neatness and cleanliness, and using public transportation. (*Id.*) Dr. Gainor opined that Plaintiff would be likely to miss more than four days of work per month due to his impairments or treatment. (R. 879.)

The ALJ summarized Dr. Gainor's treatment notes and opinion and explained that she:

> gives little weight to [Dr. Gainor's] opinion because it is not
> supported by her own treatment notes. While the psychotherapy
> notes document the claimant's complaints about anxiety and panic

around people and while driving, Dr. Gainor's mental status examinations were generally unremarkable and the claimant's treatment plan was not often changed.

(R. 27.)

### C. The Magistrate's Determination and Plaintiff's Objection

Regarding Dr. Sayegh, the Magistrate found:

> no error with the ALJ's consideration and weighing of Dr. Sayegh's opinions. The ALJ articulated the weight she afforded the opinion and properly declined to afford it controlling weight on the grounds it was inconsistent with Dr. Sayegh's documentation of Plaintiff's physical examinations. Indeed, Dr. Sayegh's significant limitations on grasping and complete preclusion of pushing or pulling run opposite to his repeated findings that Plaintiff's "[g]rips and push-pulls are strong and equal." (R. 855, 906, 914, 916, 918, 920, 922, 1037.) And other than "trigger points and tenderness bilaterally in the paraspinal muscles," Dr. Sayegh's physical examinations of Plaintiff revealed no remarkable findings. (*Id*.) Further, although Dr. Sayegh noted the existence of the May 22, 2016 MRI images in his September 21, 2016 opinion, he did not explain how the MRI findings supported his significant opined limitations. As the Sixth Circuit has held, an ALJ may properly assign little weight to opinions from treating sources "where the physician provided no explanation for the restrictions . . . and cited no supporting objective medical evidence." *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016). The undersigned therefore concludes that the ALJ did not violate the treating physician rule or otherwise err in her consideration and weighing of Dr. Sayegh's opinions.

(ECF No. 15 at 9-10.)

As to Dr. Gainor, the Magistrate found:

> no error with the ALJ's consideration and weighing of Dr. Gainor's opinions. The ALJ articulated the weight she afforded the opinion and properly declined to afford it controlling weight on the grounds it was inconsistent with Dr. Gainor's documentation of Plaintiff's mental health assessments. For instance, although Dr. Gainor's August 15, 2016 Medical Source Statement listed a diagnosis of generalized anxiety disorder, Dr. Gainor's treatment notes had not reflected this diagnosis for Plaintiff since December

8

> 21, 2015 (two assessments prior to the Medical Source Statement).
> (R. 453, 471–73, 899–900.) More importantly, although Dr. Gainor
> opined that Plaintiff was "unable to meet competitive
> standards" for understanding and remembering detailed
> instructions and carrying out detailed instructions, her assessments
> uniformly found no impairment in Plaintiff's memory or attention
> span and concentration. Indeed, Dr. Gainor's mental health
> assessment of August 15, 2016—the same date as her Medical
> Source Statement—reflected normal findings in all areas of
> assessment. (R. 896–98.) And nowhere in Dr. Gainor's treatment
> notes, spanning four years, is there any assessment of Plaintiff's
> ability to set goals or make plans. Absent further explanation
> from Dr. Gainor connecting her treatment notes to her opinions,
> the ALJ did not err in declining to credit Dr. Gainor's opinion. See
> Ellars, 647 F. App'x at 567. The undersigned therefore concludes
> that the ALJ did not violate the treating physician rule or otherwise
> err in her consideration and weighing of Dr. Gainor's opinion.

(ECF No. 15 at 12.)

In sum, the Magistrate concurred with the ALJ that both doctors' treatment notes conflicted with their ultimate opinions. According to the Magistrate, the ALJ properly considered those inconsistencies when determining the weight to afford each opinion as part of the controlling weight test.  As such, the R&R suggests that the Court overrule Plaintiff's Statement of Specific Errors and affirm the Commissioner's decision.

On August 6, 2020, Plaintiff timely filed his Objection to the R&R, repeating his primary argument that the ALJ erred by not completing the controlling weight test. (ECF No. 16.)  The Commissioner did not respond.

## IV.    STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b) (1); *see also* Fed. R. Civ. P. 72(b).  Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  The

9

Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)); *see also,* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

## V.     ANALYSIS

To summarize, Plaintiff argues that the controlling weight test does not allow consideration of inconsistencies among treating physicians' opinions and their treatment notes. Because the ALJ did so consider when affording the opinions little weight, he reasons, the ALJ did not complete the controlling weight test.

The treating physician rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). The question presented here is whether the treating physicians' treatment notes equate to "other evidence in the record" that the ALJ may consider when addressing the controlling weight test.

The answer, as the Magistrate correctly found, is yes. In her well-reasoned opinion, the Magistrate properly holds:

> 'ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes.' *Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011). *See also Price v. Comm'r Soc. Sec. Admin.*, 342 F. App'x 172, 176 (6th Cir. 2009) (affirming ALJ's decision to not afford controlling weight to treating physician's opinion in part due to inconsistency with treating

10

physician's own treatment notes); *Lester v. Soc. Sec. Admin.*, 596
F. App'x 387, 389 (6th Cir. 2015) (same); *Smead v. Colvin*, 940 F.
Supp. 2d 653, 661 (S.D.Ohio 2013) (same). Inconsistency between
a treating physician's opinion and treatment notes also constitutes
a "good reason" for not giving a treating physician's opinion
controlling weight. *See Anderson v. Comm'r of Soc. Sec.*, 195 F.
App'x 366, 370 (6th Cir. 2006).

As such, the ALJ was permitted to consider the conflicting evidence of Plaintiff's treating

physicians when conducting and completing the controlling weight test. Her use of that

information when deciding what weight to afford their opinions does not mean that she failed to

complete the test. To the contrary, it shows that she did exactly what the test required; namely,

she determined whether the opinions were not inconsistent with the other substantial evidence in

the case record when deciding not to afford those opinions controlling weight.

Plaintiff unsuccessfully attempts to differentiate his case from the Magistrate's cited

controlling case law by arguing that the ALJ in those matters applied the controlling weight test

but the ALJ here did not. (ECF No. 16 at 5-6.) Because the Court holds that the ALJ did properly

perform the test, his attempts to distinguish are irrelevant.

## VI.    CONCLUSION

Based upon the foregoing, pursuant to Rule 72(b) of the Federal Rules of Civil

Procedure, and after a *de novo* determination of the record, this Court concludes that Plaintiff's

objections to the R&R are without merit.  The Court thus **OVERRULES** the Plaintiff's

Objection (ECF No. 16), **ADOPTS** the Magistrate Judge's R&R (ECF No. 15), and **AFFIRMS**

the Commissioner's decision. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in

accordance with this Order and terminate this case from the docket records of the United States

District Court for the Southern District of Ohio, Eastern Division.

11

**IT IS SO ORDERED.**

<u>/s/ Sarah D. Morrison</u>
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**